FILED
US DISTRICT COURT
WESTERN DISTRICT
OF ARKANSAS
Apr 23, 2024
OFFICE OF THE CLERK

AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT
for the
Western District of Arkansas

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )  Case No. 5:24cm40-CDC
INFORMATION ASSOCIATED WITH FACEBOOK USER ID )
100092242776535 THAT IS STORED/HOSTED AT PREMISES )
CONTROLLED BY META PLATFORMS, INC. )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

SEE ATTACHMENT "A"

located in the ____Western____ District of ____Arkansas____, there is now concealed *(identify the person or describe the property to be seized)*:

SEE ATTACHMENT "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 3583 | Supervised Release Violations |

The application is based on these facts:
SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

☑ Delayed notice of __30__ days *(give exact ending date if more than 30 days:* _____ *) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.*

*Zachary Dunford*
Applicant's signature

Zachary Dunford, Deputy United States Marshal
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
*(specify reliable electronic means).*

Date: April 23, 2024 @ 11:05 am

*[Judge's signature]*

City and state: Fayetteville, Arkansas     Christy D. Comstock, U.S. Magistrate Judge
Printed name and title

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF FACEBOOK USER ID 100092242776535 THAT IS STORED AT PREMISES OWNED, MAINTAINED, CONTROLLED, OR OPERATED BY META PLATFORMS., A COMPANY HEADQUARTERED IN MENLO PARK, CALIFORNIA | Case No. _____ |

**AFFIDAVIT IN SUPPORT OF AN APPLICATION UNDER RULE 41 FOR A SEARCH AND SEIZURE WARRANT**

I, Zachary Dunford, Deputy United States Marshal with the United States Marshals Service, being duly sworn, depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this sworn statement in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for location information associated with a certain Facebook user ID that is stored at premises owned, maintained, controlled, or operated by Meta Platforms. ("Meta Platforms"), a social networking company headquartered in Menlo Park, California. The Facebook User ID is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. Because this warrant seeks the prospective collection of information that may fall within the statutory definitions of information collected by "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrant is designed to also comply with the Pen Register Act. *See* 18 U.S.C. §§ 3121-3127. The

requested warrant therefore includes all the information required to be included in an order pursuant to that statute. *See* 18 U.S.C. §3123(b)(1).

3. I, Zachary Dunford, am a Deputy U.S. Marshal with the United States Marshals Service, and have been since November 2022. I'm currently assigned to the Fayetteville Sub Office located within the Western District of Arkansas. As part of my daily duties as a Deputy U.S. Marshal (DUSM), I conduct fugitive investigations. I have received extensive training in criminal investigations and fugitive tracking and apprehension to include the area of electronic surveillance in the tracking of fugitives.

4. During my time as a law enforcement officer, I have learned that criminals utilize various forms of web based applications to communicate with others. One main source of electronic communications is via Facebook and Facebook messenger. I know that Facebook and Facebook Messenger via Meta Platforms, have the ability to provide location information pertaining to the individauls utilizing Meta Platforms, products. The aforementioned location information can, and has assisted me in the past with locating wanted persons. .

5. The facts in this sworn statement come from my personal observations, my training and experience, court records, and information obtained from other agents and witnesses of this investigation. This sworn statement is intended to show that there is probable cause to believe that evidence more fully described in Attachment B, for the location of the subject individual listed below will be found in

2

the subject account(s), more fully described in Attachment A, and does not purport to set forth all of my knowledge of or investigation into this matter.

6. The Court has jurisdiction to issue the proposed warrant because it is a "court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is a district court of the United States that has jurisdiction over the offense being investigated. *See* 18 U.S.C. § 2711(3)(A)(i).

### STORED WIRE AND ELECTRONIC COMMUNICATION ACCESS

7. Title 18, United States Code, Chapter 121, Sections 2701 through 2711, is entitled "Stored Wire and Electronic Communications and Transactional Records Access."

8. Title 18, United States Code, Section 2703(a) provides, in part:

> A governmental entity may require the disclosure by a provider of electronic communication service of the contents of a wire or electronic communication, that is in electronic storage in an electronic communications system for one hundred and eighty days or less, only pursuant to a warrant issued using the procedures described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation or equivalent State warrant. A governmental entity may require the disclosure by a provider of electronic communications services of the contents of a wire or electronic communication that has been in electronic storage in an electronic communications system for more than one hundred and eighty days by the means available under subsection (b) of this section.

3

9. Title 18, United States Code, Section 2703(b) provides, in part:

(1) A governmental entity may require a provider of remote computing service to disclose the contents of any electronic communication to which this paragraph is made applicable by paragraph (2) of this subsection –

(A) without required notice to the subscriber or customer, if the governmental entity obtains a warrant issued using the procedures described in the Federal Rules of Criminal Procedure by a court with jurisdiction over the offense under investigation or equivalent State warrant….

(2) Paragraph (1) is applicable with respect to any wire or electronic communication that is held or maintained on that service-

(A) on behalf of, and received by means of electronic transmission from (or created by means of computer processing of communications received by means of electronic transmission from), a subscriber or customer of such remote computer service; and

(B) solely for the purpose of providing storage or computer processing services to such subscriber or customer, if the provider is not authorized to access the contents of any such communications for purposes of providing any services other than storage or computer processing.

10. The government may also obtain records and other information pertaining to a subscriber to or customer of electronic communication service or remote computing service by way of a search warrant. *See* 18 U.S.C. § 2703(c)(1)(A). No notice to the subscriber or customer is required. *See* 18 U.S.C. § 2703(c)(3).

11. The statute permits the warrant to be served on the provider, who will then disclose the relevant records to the officer, who need not be onsite at the time the search is executed. Title 18, United States Code, Section 2703(g), provides, in part:

> Presence of Officer Not Required  Notwithstanding section 3105 of this title, the presence of an officer shall not be required for service or execution of a search warrant issued in accordance with this chapter requiring disclosure by a provider of electronic communications service or remote computing service of the contents of communications or records or other information pertaining to a subscriber to or customer of such service.

12. Title 18, United States Code, Section 2711, provides, in part:

> As used in this chapter -
>
> (1) the terms defined in section 2510 of this title have, respectively, the definitions given such terms in that section;
>
> (2) the term "remote computing service" means the provision to the public of computer storage or processing services by means of an electronic communications system.

13. Title 18, United States Code, Section 2510, provides, in part:

> (8) "contents," when used with respect to any wire, oral, or electronic communication, includes any information concerning the substance, purport, or meaning of that communication; . . .
>
> (14) "electronic communications system" means any wire, radio, electromagnetic, photo-optical or photo-electronic facilities for the transmission of wire or electronic communications, and any computer facilities or related electronic equipment for the electronic storage of such communications; . . .

5

(15) "electronic communication service" means any service which provides to users thereof the ability to send or receive wire or electronic communications; . . .

(17) "electronic storage" means –

(A) any temporary, intermediate storage of a wire or electronic communication incidental to the electronic transmission thereof; and

(B) any storage of such communication by an electronic communication service for purposes of backup protection of such communication.

## META PLATFORMS TECHNICAL BACKGROUND

14. Meta Platforms owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Meta Platforms allows its users to establish accounts through which users can share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

15. Meta Platforms asks users to provide basic contact information, either during the registration process or thereafter. This information may include the user's full name, birth date, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

16. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information in the user's

account available only to himself or herself, to other specified Facebook users, to all Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook. Depending on the user's privacy settings, Meta Platforms may also obtain and store the physical location of the user's device(s) as they interact with the Meta Platforms service on those device(s).

17. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "Mini-Feed," which highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

18. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. A particular user's profile page also

includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

19. Meta Platforms has a Photos application, where users can upload an unlimited number of albums and photos. Another feature of the Photos application is the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, a user's "Photoprint" includes all photos uploaded by that user that have not been deleted, as well as all photos uploaded by any user that have that user tagged in them.

20. Facebook users can exchange private messages on Facebook with other users. These messages, which are similar to e-mail messages, are sent to the recipient's "Inbox" on Facebook, which also stores copies of messages sent by the recipient, as well as other information. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile.

21. In addition to the applications described above, Meta Platforms also provides its users with access to thousands of other applications on the Meta Platforms . When a Facebook user accesses or uses one of these applications, an update about that user's access or use of that application may appear on the user's profile page.

22. Meta Platforms uses the term "Neoprint" to describe an expanded view of a given user profile. The "Neoprint" for a given user can include the following information from the user's profile: profile contact information; Mini-Feed information; status updates; links to videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Meta Platforms applications.

23. Meta Platforms also retains IP address logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action.

24. Social networking providers like Meta Platforms typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service used, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Meta Platforms about issues relating to their account, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Meta Platforms typically retain records about such communications, including

records of contacts between the user and the provider's support services, as well records of any actions taken by the provider or user as a result of the communications.

25. Nearly all user-initiated Facebook activity, including the posting of images, status updates, the sending of messages, etc., is associated with an Internet Protocol (IP) address. Mobile devices connected to a Facebook account can also store location data associated with the device's Facebook activity.

26. Therefore, the computers of Meta Platforms are likely to contain all the material just described, including stored electronic communications and information concerning subscribers and their use of Meta Platforms, such as account access information, transaction information, and location information.

## PROBABLE CAUSE

27. The United States, including the United States Marshals Service is conducting an investigation of Cory RUSHER in connection with an arrest warrant issued by this Court.

28. Based on the facts set forth in this affidavit and the matters in the Court's records, Cory RUSHER has violated conditions of his supervised release. On January 17, 2024, an arrest warrant for Cory RUSHER was issued by the United States District Court for the Western District of Arkans. That warrant remains outstanding.

29. I am the Deputy U.S. Marshal assigned with the primary responsibility for locating and arresting Cory RUSHER. Case Number: 5:16CR50042-001 & Arrest Warrant for Cory RUSHER for Supervised Release Violation Petition. RUSHER was

sentence on February 16, 2017 for the offense of: Aiding and Abetting the Theft of Firearms from a Federal Firearms Licensee, in violation of 18 U.S.C. § 922(u), 924(i)(l), and 2. On January 17, 2024, an Arrest Warrant was issued for RUSHER for Supervised Release Violations 18 U.S.C. § 3583. RUSHER's violations include testing positive for a controlled substance, not residing at a place approved by probation, failure to report to outpatient substance abuse assement at the Joshua Center, failure to report for an outpatient mental health assessment at the Joshua Center, failure to report for drug testing and failure to make a fine payment. Further report on February 13, 2024, from RUSHER's Probation Officer, is that RUSHER has ceased all contact and has reportedly fled to Missouri to be with his girlfriend.

30.  Law enforcement have identified a Facebook account associated to Cory RUSHER, Account ID:100092242776535, Username: Cory Rusher. On February 21, 2024, DUSM Dunford identified the Facebook username Cory Rusher, Account ID:100092242778535 as belonging to the wanted subject Cory RUSHER. The account contains photographs of RUSHER consistant to booking photos of RUSHER taken by law enforcement. It is also believed that RUSHER is actively using the account; posting a picture of himself on January 07, 2024 and creating several public post as recent as March 28th, 2024.

31.  The account located associated to RUSHER was discovered through an open source search of Facebook. Further, it was found that the account with ID: 100092242778535 had the most recent information posted containing the photograph of RUSHER publicly posted on January 07, 2024. There is probable cause to believe

that the location information described in Attachment B will assist law enforcement in arresting Cory RUSHER who is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4). Based on the kinds of data preserved by Meta Platforms/Facebook, as described in more detail herein, Cory RUSHER access to and use of Facebook account can transmit location data that is kept and maintained by Meta Platforms in its regular course of business. Having access to that data in real or near real time will allow me to locate Cory RUSHER and execute the outstanding warrant.

32. Based on my training and experience in locating and apprehending potentially violent fugitives, the data being sought by this warrant will assist in locating Cory RUSHER. Because successful apprehensions, particularly of violent fugitives, often rely on the element of surprise and on taking the fugitive unaware, it is often necessary to attempt an arrest during nighttime or the early morning hours, when most people are sleeping. Further, apprehension tactical plans often change at the last minute based on unexpected movements or other behavior of the target. Therefore, I cannot predict in advance when this data would need to be accessed, and would need access to the data at all times of the day or night in order to ensure a safe and successful apprehension. As of the date of this affidavit, Cory RUSHER whereabouts remain unknown, and the arrest warrant in remains unserved.

## AUTHORIZATION REQUEST

33. Based on the foregoing, I request that the Court issue the proposed warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

34. I further request that the Court direct Meta Platforms to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Meta Platforms. I also request that the Court direct Meta Platforms to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Meta Platforms services.

*Zachary Dunford*
Zachary Dunford
Deputy United States Marshal

SUBSCRIBED AND SWORN to before me this 23rd day of April, 2024.

Christy D. Comstock
United States Magistrate Judge

**ATTACHMENT A**

**Description of property to be searched**

This warrant applies to information associated with the Facebook user ID 100092242776535 that is stored at premises owned, maintained, controlled, or operated by Meta Platforms Inc., a company headquartered in Menlo Park, California.

## ATTACHMENT B
## DESCRIPTION OF PROPERTY TO BE SEIZED

**I.     Information to be Disclosed by Meta Platforms. (the "Provider)**

To the extent that the information described in Attachment A is within the possession, custody, or control of Meta Platforms, Meta Platforms is required to disclose, pursuant to Title 18, United States Code, Section 2703(c) and (d), the following information to the government for each User ID listed in Attachment A:

(a)    All physical location data collected by MetaPlatforms for the user of the account, including any data collected by Facebook's location services via the user's mobile phone or other device, on a real-time or near-real time basis. Facebook is required to provide any such data they collect, regardless of the time of day.

(b)    All information associated with each communication to or from the Facebook account, including date, time, and duration of the communication, and the following without geographic limit: subscriber information, email addresses, IP addresses, including IP addresses associated with access to the account; MAC addresses; Port number; and Packert headers.

(c)    **Historical non-content information:** All information associated with each communication to or from the Facebook account, including date, time, and duration of the communication, and the following without geographic limit: subscriber information, email addresses, IP addresses, including IP addresses associated with access to the account; MAC addresses; Port number; and Packert headers for the time period from (60 Days until this is signed).

## II. Information to be Seized by the Government

(a) All information described above in Section I that will assist in arresting **Cory RUSHER** who is the subject of an arrest warrant issued on January 17, 2024 and is a "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).

(b) All data disclosed by Meta Platforms pursuant to this attachment, including those authorized by the Pen Register Act, shall be made accessible by Facebook to the United States Marshal's Service 24/7, day or night, as directed by the U.S. Marshals Service.

(c) Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by the Provider in order to locate the things particularly described in this Warrant.

## III. Time for Production by Provider

The Provider shall begin producing the information required by this attachment within seven (7) days of the date of service of the warrant.

## IV. Duration of Production

The Provider shall produce the information required by this attachment for a period of **forty-five (45) days** from the date of issuance of this warrant, or until the

investigation is completed, whichever comes first.